**In re Everett Bradley WILLIAMS and Sheria Michele Williams, Debtors.**

No. 09–11598.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

July 30, 2009.

Charles R. Perkins, Gerald D. Lawson, Jr., Stephanie Green Cole, Memphis, TN, for Debtors.

**MEMORANDUM OPINION RE:** (1) **First South Bank's "Motion for Abandonment,"** (2) **Debtors' Response to Motion, and** (3) **Chapter 12 Trustee's Objection to Motion**

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on First South Bank's motion for abandonment, the debtors' response to the motion and the Chapter 12 Trustee's objection to the motion on May 27, 2009. FED. R. BANKR.P. 9014. Resolution of this matter is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR.P. 7052.

### I. FINDINGS OF FACT

The facts in this case are undisputed. Everett Bradley Williams and Sheria Michele Williams, ("debtors"), filed a chapter 12 petition for bankruptcy relief on April 23, 2009. The debtors listed First South Bank, ("First South"), on schedule D of their petition with a claim of $154,097.14. First South's claim is secured by a lien on the debtors' 2008 crops. At the time of filing their case, the debtors were in possession of a check issued by Cargill Company on March 23, 2009, in the amount of $111,467.28. The check represents proceeds from the sale of the debtors' 2008 crop and is jointly payable to Everett Bradley Williams and First South.

On April 30, 2009, First South filed a motion for abandonment of any interest the estate would have in the $111,467.28 crop proceeds check. Timothy Ivy ("Ivy"), the chapter 12 trustee in this matter, filed an objection to the motion on May 11, 2009. Ivy asserted that the $111,467.28 check is property of the estate and should be turned over to him for distribution to First South. At the hearing in this matter, Ivy stated that he would remit the entire amount of the check to First South without deducting the trustee's commission. Instead, Ivy would seek payment of the $5,573.36 commission from the debtors.

The debtors filed a response to First South's motion on May 6, 2009. The debtors did not formally object to the motion to abandon. They simply stated that they agreed to endorse and turnover the check to First South. At the hearing, counsel for the debtors admitted that the debtors do have the funds on hand to pay the trustee's commission; however, they feel that they need to reserve this cash for any unexpected expenses they might incur in their farming operation. According to their counsel, payment of the trustee's commission would be detrimental to the estate.

### II. CONCLUSIONS OF LAW

What is at issue in this case is whether the debtors had a property interest in the $111,467.28 check at the time their chapter 12 petition was filed such that the check became property of the estate. Section 541 of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history for § 541(a) indicates that Congress intended the definition to be

interpreted broadly "to include 'all kinds of property, including tangible or intangible property, causes of action. . . ." *In re Johnston,* 209 F.3d 611, 613 (6th Cir.2000). The question of whether or not something is property of the estate is a federal question. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "In the absence of controlling federal bankruptcy law, the substantive nature of the debtor's property interest is defined by state law." *In re R.W. Leet Electric, Inc.,* 372 B.R. 846, 852 (6th Cir. B.A.P. 2007).

▮ Under Tennessee's version of the Uniform Commercial Code, a check is considered a "negotiable instrument." T.C.A. § 47–3–104. A payee of a negotiable instrument who is in possession of that instrument is considered the "holder" of the instrument. T.C.A. § 47–1–201(21)(A). Pursuant to T.C.A. § 47–3–301, the holder of an instrument is entitled to enforce that instrument. The Court finds that this enforcement right gives a debtor in bankruptcy an interest in a negotiable instrument which is sufficient to bring it within § 541's definition of "property of the estate." This enforcement right qualifies a negotiable instrument as property of the estate regardless of whether the debtor's interest in the negotiable instrument is subject to a secured creditor's lien. The check at issue in this case is "property of the estate."

Pursuant to 11 U.S.C. § 1202(b), a chapter 12 trustee is obligated to collect property of the estate and divide that property among creditors according to their lien rights. In this case, the debtors must turn the $111,467.28 check over to Ivy. Once First South submits proof of their entitlement to the crop proceeds to the trustee, Ivy may remit the proceeds to the bank. The debtors will then be obligated to pay the $5,573.36 trustee's commission to Ivy. First South's entitlement to the crop pro-

ceeds check will be subject to any superior claims asserted by other creditors.

**The following is SO ORDERED.**