2009 UT 3

**In re Janerae F. SMITH, Debtor.**

**Janerae F. Smith, Appellant,**

**v.**

**R. Kimball Mosier, Trustee, Appellee.**

**No. 20070892.**

Supreme Court of Utah.

Jan. 23, 2009.

David L. Miller, Layton, for appellant.

R. Kimball Mosier, George B. Hofmann, Salt Lake City, for appellee.

---

66. *In re J.M.V.,* 958 P.2d 943, 948 (Utah Ct.App. 1998).

67. *Id.*

68. 2001 UT App 225, ¶ 10, 29 P.3d 676.

NEHRING, Justice:

## INTRODUCTION

¶ 1 We consented to answer the following question certified to us by the United States Bankruptcy Appellate Panel of the Tenth Circuit:

Whether pursuant to Utah Code section [78B–5–507 (2008)[1]] monies refunded to a taxpayer as an overpayment of taxes are exempt when the monies with which the tax deposit was made were exempt?

¶ 2 We hold that in the case of exempt retirement income, refunds from the overpayment of taxes remain exempt because the recordation of taxes and refunds is a reasonable method of tracing.

## BACKGROUND

¶ 3 Neither party disputes the facts in this case. We recite the facts as they were presented to us in the Tenth Circuit's certification order. In 2006, Janerae Smith's only sources of income were distributions from social security and qualified pension plans in the amount of $50,031. On December 22, 2006, Ms. Smith filed for bankruptcy under Chapter 7 of the Bankruptcy Code. R. Kimball Mosier was appointed as the Chapter 7 Trustee.

¶ 4 Ms. Smith's income tax liability for 2006 was $3,746. However, $7,058 was withheld from the exempt income she received, and these monies were deposited with the tax authorities. When filing her tax returns, Ms. Smith discovered that she had overpaid her taxes and was entitled to a $3,312 refund. She therefore filed an Amended Schedule B in her bankruptcy case, simultaneously claiming that the excess taxes she paid were exempt under Utah Code section 78B–5–505(1)(a)(xiv) (2008) as traceable proceeds from an exempt fund. Mr. Mosier filed an Objection to Debtor's Claimed Exemption. A hearing was held, and the United States Bankruptcy Court for the District of Utah entered an order disallowing Ms. Smith's claim. Ms. Smith appealed to the United States Bankruptcy Appellate Panel of the

Tenth Circuit, which certified the above question to this court. We have jurisdiction to answer certified questions from the federal court pursuant to Utah Code section 78A–3–102(1).

## STANDARD OF REVIEW

¶ 5 "When a federal court certifies questions of state law, we answer the legal questions presented without resolving the underlying dispute." *Tabor v. Metal Ware Corp.*, 2007 UT 71, ¶ 5, 168 P.3d 814 (internal quotation marks omitted).

## ANALYSIS

¶ 6 The federal court asks us if, under Utah law, monies refunded to a taxpayer as an overpayment of taxes are exempt when the monies from which the tax payments were withheld were exempt. We hold that they are exempt because the recordation of taxes and refunds is a reasonable method of tracing.

¶ 7 The federal court asks us to rule on this issue because Utah has elected to replace the exemptions authorized by federal law with those provided by state law. *See* 11 U.S.C. § 522(b)(2) (2006) ("Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor … specifically does not so authorize."); Utah Code Ann. § 78B–5–513 (2008) ("No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in Subsection (d) of Section 522 of the Bankruptcy Reform Act (Public Law 95–598), except as expressly permitted under this part."); *see also id.* §§ 78B–5–501 to –513 (Utah Exemptions Act). We note at the outset of our analysis that "exemption statutes are liberally construed in favor of the debtor to protect him and his family from hardship." *Russell M. Miller Co. v. Givan*, 7 Utah 2d 380, 325 P.2d 908, 909–10 (1958); *see also In re Neiheisel*, 32 B.R. 146, 167–68 (Bankr.D.Utah 1983) ("When a Utah statute grants an exemption, the Utah Supreme

---

1. The Utah Exemption Act was recodified in 2008 as Utah Code sections 78B–5–501 to –513. Because no substantive changes were made, we cite the most recent version.

Court has consistently applied a liberal construction in favor of debtors to protect debtors and their families from hardship.").

¶ 8 Utah's exemption law provides that certain classes of property and money are exempt from the bankruptcy estate, the fund that may be accessed to pay creditors. Utah Code Ann. § 78B–5–505. Additional debtor protection is provided in a few special classes of exemptions, including retirement income. *Id.* § 78B–5–507(2). The statute states that the money or property exempt under one of these special classes "remains exempt ... in any other form into which it is traceable." *Id.* Mr. Mosier argues that the funds at issue, after being placed in the United States Treasury, are not traceable because they lost any unique identity when they merged into the vast sea of government funds. As a result, the funds lost their status as exempt property. Ms. Smith, on the other hand, argues that the money sent to the treasury and returned in the form of a tax refund was traceable to its source, the exempt retirement payments. The core question for us to answer is whether money sent to the treasury for payment of taxes is traceable when it is refunded as a tax overpayment.

¶ 9 Tracing is a procedure that attempts to identify the source and nature of money or an asset that has been removed from its point of origin. Courts have used tracing in various areas of the law, such as bankruptcy and divorce, to identify and segregate property that has been commingled with other property or in some way lost its identity. *See* William Stoddard, Note, *Tracing Principles in Revised Article 9 § 9–315(B)(2): A Matter of Careless Drafting, or an Invitation to Creative Lawyering?*, 3 Nev. L.J. 135, 135 (2002). Tracing is used, for example, when money from a particular transaction that a court is reviewing has been commingled in a bank account with other funds. Several tracing methods can be used to determine if the money from the transaction under review is still in the account.

¶ 10 Utah Code section 78B–5–507(3) describes the methods for determining whether money, once exempt under Utah's bankruptcy exemption law, retains its exempt status after leaving the direct control of the initial recipient. The statute approves two specific tracing methods: first-in first-out or last-in last-out.[2] Utah Code Ann. § 78B–5–507(3)(a). It also recognizes that exempt property may remain exempt if the debtor utilizes "any other reasonable method of tracing." *Id.* § 78B–5–507(3)(b). Ms. Smith argues, and we agree, that money withheld by the Internal Revenue Service and then returned as a refund is reasonably traceable. This is because the money is never really lost. By filling out forms to have taxes withheld and then filling out forms for a refund, Ms. Smith has kept track of the amounts paid and received. We concede that it is impossible to reasonably segregate any particular fund of money once it is swept into the maw of the federal treasury. We nevertheless also recognize that the IRS maintains an individualized accounting of funds paid into the treasury by each taxpayer and similarly identifies the recipient of funds paid to taxpayers for overpayment of taxes. The money is not, as Mr. Mosier asserts, hopelessly commingled in the federal treasury and lost as to its original identity. Rather, we view the system similar to how one keeps track of money in a bank account.

¶ 11 When an individual makes a deposit into a bank account, the actual money is not kept in a box with the depositor's name on it. Rather, it is taken by the bank and commingled with the bank's other assets and used by the bank for business purposes. The individual and the bank, however, keep track of the amount of money because it has been assigned to a particular account. Similarly, the IRS keeps accounts of everyone who has paid taxes and how much has been paid. When an individual requests a refund because of overpayment, the IRS is able to check the amount of taxes paid against the amount of taxes due and then return any excess that it received. It seems very reasonable to us that such money is traceable to its original status.

¶ 12 As a general principle of bankruptcy law, tax refunds are not exempt. The United

---

**2.** We recognize that first-in first-out and last-in last-out produce essentially the same result. The statute does not refer to last-in first-out, though it is a commonly used method of tracing.

States Supreme Court held that a tax refund is property that passes to the bankruptcy trustee under the Bankruptcy Act. *Kokoszka v. Belford*, 417 U.S. 642, 652, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). In deciding this, the Court stated that " '[i]t is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched.' " *Id.* at 645–46, 94 S.Ct. 2431 (quoting *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913)). The Tenth Circuit clarified the reasoning for not allowing tax refunds to be exempt when it stated, "In these cases, the pre-petition portion of the refund essentially represents excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made." *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1518 (10th Cir.1991). This is also the general rule in Utah. If Ms. Smith's tax refund was not traceable to exempt retirement income, the refund would not be exempt.

¶ 13 Mr. Mosier argues that based on *Manchester v. Annis (In re Annis)*, 232 F.3d 749 (10th Cir.2000), we should hold that Ms. Smith's tax refund is not exempt. In that case, the Tenth Circuit, ruling on an Oklahoma bankruptcy case, held that exempt money paid as taxes did not remain exempt when it was refunded because the original withheld funds were taxes and had lost their character as "earnings from personal services," which would, in some circumstances, be exempt under Oklahoma law. *Id.* at 753. The court recognized that under Oklahoma's exemption statutes, once exempt property was converted to a different form, it lost its exempt status. *Id.*

¶ 14 *Manchester* is inapposite because, unlike Oklahoma law, Utah law provides that exempt money or property "remains exempt ... in any other form into which it is traceable." Utah Code Ann. § 78B–5–507(2). In our view, it would be very possible, if not highly likely, that the result in *Manchester* would have been decided differently had it been governed by Utah law. The Utah Leg-

islature made clear that money or property may be converted into other forms and retain its exempt status when it wrote that exempt money or property "remains exempt ... in any other form into which it is traceable." Utah Code Ann. § 78B–5–507(2). Thus, even though Ms. Smith's exempt retirement income may have been converted into taxes and then into a tax refund before being returned to her, it was reasonably traceable through the entire process and remains exempt. We therefore hold that exempt retirement income, withheld for the purpose of paying taxes, remains exempt when it is refunded to the taxpayer as an overpayment of taxes.

———

¶ 15 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.